# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY C. COULTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-15-331-SPS |

## OPINION AND ORDER

The claimant Johnny C. Coulter requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 16, 1964, and was forty-nine years old at the time of the administrative hearing (Tr. 39, 172). He completed the tenth grade, and has worked as a truck driver, welder, bricklayer helper, and concrete paving helper (Tr. 31, 187). The claimant alleges he has been unable to work since November 2, 2010, due to seizures (Tr. 186).

## Procedural History

On October 6, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 28, 2014 (Tr. 21-33). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he was precluded from work at unprotected heights, around dangerous moving machinery, and moderate exposure to extreme temperatures, high humidity, loud noises, frequent vibrations, and concentrated

fumes. Additionally, the ALJ limited the claimant to simple tasks with routine supervision (Tr. 26). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, dry cleaner helper, automatic machine attendant, and press machine operator (Tr. 32).

**Review**

The claimant contends that the ALJ erred by failing to properly evaluate the medical evidence with regard to the claimant's mental impairment, and the Court agrees. Accordingly, the decision of the Commissioner is therefore reversed.

At step two, the ALJ determined that the claimant had the severe impairments of seizure disorder, migraine headaches, methamphetamine and cannabis abuse (in sustained remission per testimony), and illiteracy, as well as the nonsevere impairments of left ankle pain, right elbow pain, and neck and back pain (Tr. 23-24). At step three, the ALJ determined that the claimant's depression was a nonsevere impairment, finding that the claimant had mild restriction of activities of daily living, but moderate difficulties in social functioning and maintaining concentration, persistence, and pace, but no episodes of decompensation (Tr. 25). The medical evidence relevant to this appeal reflects that the claimant was sent for a consultative mental examination, but that physician has since been discredited and his opinion was not part of the ALJ's decision. As such, the ALJ gave no weight to this decision, and additionally gave no weight to the state reviewing physician opinions based on this consultative examination. A consultative physical

examiner assessed the claimant with seizure disorder, illiteracy, and possible fracture of the right elbow (Tr. 339).

Following the administrative hearing, the ALJ sent the claimant for a consultative mental examination. On January 9, 2014, Dr. Stephanie Crall conducted a present mental status assessment of the claimant. Her diagnostic impression was that the claimant had a cognitive disorder not otherwise specified, along with moderate major depressive disorder, as well as polysubstance dependence in full sustained remission, cannabis abuse by history, and cocaine abuse by history (Tr. 831). It was her opinion that, with regard to both simple and complex tasks, the claimant was substantially impaired in the ability to sustain attention, understanding, and remembering, and to persist at such activities. Furthermore, she cited the claimant's recent and remote information, poor concentration, depression, limited reading and writing skills, and lack of high school diploma/GED all as factors that would impair the claimant's ability to obtain and maintain competitive employment (Tr. 831). She did not expect the claimant's prognosis to change or improve within the next twelve months (Tr. 831). Additionally, Dr. Crall completed a Medical Source Statement (MSS), indicating the claimant had marked limitations in the ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions, and that he had moderate limitations in the ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions (Tr. 832). She cited the claimant's cognitive disorder as supporting this assessment, which she stated affected concentration, short-term memory, and long-term memory (Tr. 832).

In his written opinion, the ALJ determined the claimant's severe and nonsevere impairments at steps two and three. At step four, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record. The ALJ found that the claimant had normal judgment, memory, mood, and affect prior to and after a May 2012 head injury, and noted that the claimant's treating physicians had placed no restrictions on him (Tr. 30). As to Dr. Crall's opinion, the ALJ "realized" it was a "present" evaluation done in 2014 and found it had "little value" in assessing the claimant's mental status prior to the date late insured of December 31, 2012 (Tr. 31). The ALJ refuted her findings regarding the claimant's concentration because he watched television and played games on his phone, and asserted that all jobs identified accounted for the claimant's illiteracy. He then concluded by stating that he had given her opinion little weight (Tr. 31).

As an initial matter, the Court notes that the ALJ gave no weight to the opinion of the state reviewing physician with regard to the claimant's mental impairments, and little weight to the consultative examiner's 2014 opinion regarding his cognitive disorder and major depressive disorder. The ALJ's assigned RFC that included a limitation to simple tasks with routine supervision is presumably a psychologically-based limitation, but here the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for *this* claimant's severe impairment of illiteracy, the nonsevere impairment of depression, and the ignored impairment of cognitive disorder. *See, e. g.*, *Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step

five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). The Court acknowledges that the record in this case is sparse with regard to evaluations of the claimant's mental impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). The ALJ should nevertheless consider recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination to properly account for the claimant's mental impairment *during the relevant time*. The ALJ is not entitled to reject all evidence and then insert his own findings and assumptions about the claimant's limitations. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the

record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *See Hawkins*, 113 F.3d at 1166, 1168. The ALJ could also request that a state agency physician review the record. Such additional review or examination would have been helpful in this case, because the ALJ essentially rejected every opinion related to the claimant's mental impairments and thus had no opinions to support the basis for formulating the claimant's mental RFC. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

Furthermore, the jobs identified by the ALJ *do not* support his finding that the claimant had the severe impairment of illiteracy. At the administrative hearing, the ALJ asked the VE to identify jobs with the above-mentioned RFC, and she identified the three jobs ultimately adopted by the ALJ in his written opinion (Tr. 80). He then asked her if the claimant was illiterate if that would affect her testimony, and she said that it would not (Tr. 80). She then testified that her testimony was consistent with the Dictionary of Occupational Titles (Tr. 81). This is error because two of the jobs identified by the VE, as defined in the Dictionary of Occupational Title, require a Level 1 reading level, which is defined as: "Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 works per minute. Compare similarities and differences between words and between series of numbers." *See* DICOT §§ 362.686-010 (Dry-Cleaner Helper), 649.685-014 (Bag-Machine Operator). The third job identified by the ALJ requires a Level 2 reading level, which is defined as: "Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books,

looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes." Because the ALJ failed to reconcile the claimant's inability to read with a finding that he can perform jobs requiring him to read 2,500 words at a minimum, his decision is not based on substantial evidence.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of March, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**